Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Vincent Graham, appeal number 191813. Good morning, Attorney Herrick. Are you ready to proceed? I am. May it please the court, as I indicated, I'm here for Vincent Graham. What I would suggest is that all the victims of the offense at issue in this case are vulnerable. The question here really is whether J.R. was unusually vulnerable, as that is what the guidelines require. What I would suggest is that the attributes that she shows, basically drug addiction and an experience of, or a history of being beaten by her pimp, does not, her places are mainly or squarely in the mainstream of the victims of this offense. Well, the court pointed to what happened when she came back in December. That's right. And I think the court placed a lot of weight on that. And I think, frankly, the court thought that her succumbing once again to his influence demonstrated unusual vulnerability. Right. And I think there's a problem here with the term battered woman. He basically described her as a battered woman. And I think what wound up happening was that... She's described as a battered woman in the PSR and there was no objection. One thing that had occurred to me is that because there was no objection, when you use the term battered woman, I mean, there's a medical diagnosis of battered woman syndrome, and then there's just the fact of someone being battered. But regardless, it was used in the PSR and there was no objection. Oh, I mean, I think factually, she was a woman who had been battered. We don't dispute that. The concern that I have is that I think that the judge basically took that a step further and assessed this to be a battered woman case, where battered woman syndrome is at play, because he seemed to take the position that her return to her batterer was somehow impelled by her status as a battered woman. And I think that that is basically an erroneous view of the phenomenon of battered woman syndrome. Ultimately, battered woman syndrome involves or implies an intimate relationship. And here, there's not an intimate relationship. She's not going back to Mr. Graham because she wants to rekindle the relationship or maintain a relationship. The reason she's going back is transactional, frankly. She wants drugs, he has drugs, and he's willing to give them, but at obviously a steep price. Does your argument depend then on us saying it's clear error for us to conclude, for the judge to have concluded otherwise, that there might have been more to the particular relationship between these two than just the transactional description of it that you give? I think it does, actually. So if you don't think it was clear error to find that there may have been more than just a transactional basis, then you have no objection to the application of the enhancement? Oh, no, I continue to have an objection because I think the predominant factors and the fact that she was beaten simply applies to victims of this offense conduct. What I'm asking you is whether there's two different things. There's the question of whether there was any physical violence done to the victim. Your contention is that alone is not enough to make you unusually vulnerable. But if there's more to it than that, as the district violence done to her resulted in an unusual dependency, does that distinguish the person? And if it does, then does your argument depend on us saying it was clearly erroneous for the district court to conclude that the violence involved here was of that latter sort? I think that if the judge were to have found that there was a domestic relationship or a relationship of a return to her batterer, then yes, I think that's correct. We obviously don't think the record supports that. Didn't the court point to your client's statements to her that he loved her, which takes it beyond transactional? As a relationship or at least he's persuading her that there's a relationship. He certainly did mention that. I think the reality is that in these cases, or at least in my experience, that that sort of dangling of a relationship is all part of a relatively complex coercive element of maintaining the sex trafficking. But to suggest that she did not reinitiate a relationship. She basically was going back for drugs, or at least that's our reading of the record. When she broke away from him the first time, was she continuing to engage in sexual activity, transactional? To my knowledge, no. She had been a prostitute before she ever came into contact with him, but to my knowledge, she was not. I think the record indicates, though, that after her relationship, whatever she was determined with him ended, that she did go back to prostitution. Is that correct? Well, she went back in December. After she ended her relationship with him. Oh, I believe you're correct that she did return to it. This was her way of getting drugs. Five minutes remaining. Do you have anything further to argue? I do. I do, Your Honor. One thing I think is important to point out is that when we're talking about unusual vulnerability, I do think it's important for the court to basically have a clear idea of what the cohort is. What is this class of people who are being victimized in this way? Because obviously, it's an unusually vulnerable person that we're trying to find out. I don't think the district court really clearly set out what the cohort was. It seemed more instinctive than having any empirical basis. So I'm not sure that empirically, there was an adequate basis to determine that J.R. was not a particularly unusually vulnerable person. I also think it's important to point out that in some ways, she was actually less vulnerable than your typical victim. And I say that in part because she wasn't a child. She was an adult. She was in her mid-30s. But also, and I think the key point here is she had family support. She had community support. So when she wanted out, she was able to get family and friends to come and get her. And that is very often not the case. And so this is an individual who I think did have some resources available to her. And I think because she had those resources available to her, the unusual vulnerability, again, simply should not have been found. I would just quickly like to address the harmless error issue. As I conceded in my brief, generally, if there's an error in calculating or error in applying an adjustment, if it doesn't change the GSR, it doesn't wind up being a harmful error or a prejudicial error. What I would suggest in this case, though, is that the entire theme of the judge's sentencing rationale really is vulnerability. And not only that, but he goes so far as to say that he thinks that Mr. Graham will go ahead and essentially exploit other women in a vulnerable situation. So I think because this one finding was so critical to the sentencing rationale, I suggest that the error can't be harmless. And I'd also just point out that if, indeed, this was an unusually vulnerable individual, it's a worse crime. And if it's a worse crime, the judge is more likely to impose a harsher sentence. And I think that's what happened here. Well, the logic of that counsel would seem to say, suppose the judge had said, I don't think she meets the criteria for unusual under the guidelines, but I'm going to go higher on my sentencing rather than lower, because I think she wasn't unusual, if not too unusual enough to qualify under the guidelines, but she was in a very vulnerable position. There was a repetitive relationship. Wouldn't the judge have discretion in just setting the sentence after having calculated the guidelines to do that? Well, I think the judge has that discretion, but it tends to be in a black box. So he wouldn't necessarily have articulated that. He wouldn't have had to articulate it. So I do think it's the case that the judge has that power, had that discretion. But nevertheless, I would suggest that this finding, a formal finding, that he met this rationale. Judge, if that's time. Thank you. Before Attorney Lopez begins, could Attorney Herrick please mute your audio and video? Could you introduce yourself again, Attorney Lopez? Yes. Good morning. Julia Lopez for the United States. May it please the court? Are you ready to proceed? I am. Thank you. It's our position in this case that the district court did not clearly err, and in fact, committed no error in finding that J.R., as a result of her particular characteristics, was an unusually vulnerable sex trafficking victim. The district court in this case... It was the period of time in July and August of 2015, which the record shows J.R. endured an escalating pattern of abuse from Mr. Graham, culminating in two unusually vicious assaults. She was able to escape at that point, but the district court, in our view, supportably concluded that after she had been away from him for several months, when she reconnected with him in December, she quite easily fell back into the trafficking relationship with him, and the court concluded that at that point, she was, in the court's words, a battered woman, that she hadn't endured such serious physical abuse that she was essentially unable to resist the trafficking. So you agree that she engaged in prostitution before she met him? The record shows that it was very briefly, Your Honor, I think maybe for a month. In our view... Was she unusually vulnerable then? I think that there may have been an argument to be made that at some point during the trafficking relationship in the summer, she did become unusually vulnerable. I think what the district court here did is took an extremely cautious approach, because the physical abuse was extremely serious assaults, and so being extremely cautious, the court concluded that basically at that point, when that ended, Graham had battered her into submission, so that when she saw him again in December, she was unable to resist the trafficking, and that's really what this... So physical abuse, unfortunately, is very much a part of trafficking for anyone. I mean, that's the way people control these women, primarily through drugs and battering. It can be, Your Honor. The statute speaks in terms of forced fraud or coercion, so there are different methods of trafficking. Physical abuse, absolutely, we agree, can be one of them. I think what the court found in this case is this abuse was really awful, for lack of a better word, and J.R. describes it escalating. If you look at her grand jury testimony, which was provided to the court at sentencing, she talks about how he originally would... It began with sort of slapping her across the face. He would burn her with objects, and then it culminated in these two assaults that were in the end of August 2015 that were witnessed by others. She describes one of them, it was like a grown man punching another grown man. She described it as like UFC fighting. Other witnesses described J.R. being covered in bruises of different colors. So I think what the court concluded is that the abuse had become so bad that she was unable to resist him when she saw him a second time. And there are a couple factual corrections I'd like to make to the record. It is our position that this was, in essence, a domestic or intimate relationship. J.R. in her grand jury testimony describes Graham. She said, at one point, I thought he was the love of my life. And certainly, he talked in terms of loving her. So I don't think it's correct to say that this was purely transactional on her part. She had an emotional connection to this man that Mr. Graham, of course, also manipulated. I also do not think it's the case that she went back to prostitution after the relationship ended. At least at the time she testified in the grand jury, she talked about when she finally escaped from him at the end of December and went to the hospital, she had been clean and sober as of that moment and had gone into a home for survivors of human trafficking. So I just wanted to correct both of those factual points. But again, I think what the court did here was take a nuanced view, looked at the two periods of trafficking. There were several months in J.R. was not being trafficked, was not engaging in prostitution. And yet, as soon as she sees Mr. Graham again, she falls right back into it with him. And I think there was no clear error in the district court's finding that at that point, the battering had essentially done something to her psychologically such that she was unable to resist him anymore. And he knew that because he had done that. Did she return to prostitution after he was out of her life? Based on the record we have, it appears no. When she testified in the grand jury, she said that when she escaped from him the final time and went to the hospital after the last beating in December, she had been sober since that point and had gone to a home for survivors of human trafficking. So based on what I see on the record, I don't believe that she went back to prostitution. No. Five minutes remaining. Could you just help me from the government's perspective? How are we supposed to apply this guideline enhancement to this type of offense? So if I just look at the statute, like you say, it says force, fraud and coercion. It doesn't mention any characteristics particularly that would help me understand what the cohort is so that I could then understand who's unusual within it. Obviously, in this case, there's extreme physical violence. And as you say, there's a but there's nothing from the commission that I'm aware of that defines the typical victim. And what's the court supposed to do just from the government's perspective? What is the court supposed to look to to try and determine? I mean, at one level, there's not even a mention in the statute of drug addiction. Yet there seems to be some shared understanding that that's a very if you show that you had an extreme addiction, that might not be enough to show you unusually vulnerable. But I don't know where I'm supposed to get the information that I would look to to figure out what the cohort is so I could determine who's unusual in it. Put differently, what's the typical victim? Those are great questions. I'm not sure I have an entirely satisfactory answer. I've looked at the way courts have applied this enhancement. And I think you're right, Judge Barron, that there seems to have developed this shared understanding, I think, perhaps, hearkening back to this court's decision in Sabatino, which has been adopted by other circuits, that that was dealing with the Mann Act. And this is obviously a different statute, although they are, I think, designed to address similar harms and protect similar victims. That these are statutes that are designed to protect people who are vulnerable, generally. And Sabatino looked a bit at the legislative history. There's a Ninth Circuit case we cited. It's Chang-Ru Meng Backman, where they talk a bit about the Trafficking Victim Protections Act, which is where the sex trafficking statute comes into play, and says that it had a similar purpose to protect those who are vulnerable. What the Ninth Circuit did in the Backman case, they didn't necessarily define a class of typical statute that we know is designed to protect those who are vulnerable, generally, is look to see whether there are either a high number of vulnerabilities, or the vulnerabilities are of such a degree that it appears that enhancement may be appropriate. So in that case, the victim had been defrauded, tricked into coming to another country for a job, and it turned out she was being prostituted instead. And the Ninth Circuit said, you know, certainly that could happen in many types of trafficking cases, but that victim was unusually vulnerable because she didn't speak English, she had no family there, she was seriously indebted. So there was sort of an enhanced vulnerability, so they were of such a degree that the court felt comfortable that the enhancement should apply. So I really think it's just a matter of degree. I think we can all agree that the majority of sex trafficking victims are going to share many vulnerabilities, but that in a particular case, the court might think the vulnerability is of such a degree. Can I just interrupt? Because one thing that made some sense to me was that the idea should be that if the base offense level for the crime already took account of the seriousness of the conduct, and there was some indication the commission had already had an idea of the conduct that it was triggering the base offense level for, it would be problematic to then apply this enhancement if it was encompassing persons that the commission had in mind when they set the base offense level. Do we have any information about the class of victims the commission had in mind when it set the base offense level? Not that I'm aware of, Your Honor. And again, the courts of appeals, they do apply this enhancement in sex trafficking cases, where we know essentially all victims are vulnerable. So I don't think there's a per se bar on applying it in a sex trafficking case. Again, I think it just comes down to the district court's assessment of whether there were unusual or a high degree of vulnerability, which we submit that did exist in this case. And the district court really did take a nuanced approach. And then I would finally just say, we do maintain that any error here was harmless, because the guideline range would be 360 months to life, even in the absence of this enhancement. To say that this is unusual, we need to know what the usual is. Empirically, what information do we have in this record? Or did the district court have that would allow it to say that this is unusual? Your Honor, I don't think there was any And I would submit that with any crime, that might be a hard thing to obtain. Obviously, some studies are done, but it's still a hard thing to measure. I would look, for example, to fraud statutes, where courts have applied vulnerable victims enhancements. I think the court just sort of uses its general knowledge of what fraud crime looks like to determine that certain victims of fraud are more vulnerable than others. And I think that's what the district court was doing here. That's time. Thank you. Thank you, counsel. Thank you, Your Honor. Judge Thompson, I don't believe that we have any rebuttal reserved. So if you'd like, we can go on to the next case. Please.